**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **1:13-cr-92-01-WSD-LTW** |
| **DONALD R. LAFOND, JR.,** | |
| **Defendant.** | |

**OPINION AND ORDER**

This matter is before the Court on Magistrate Judge Linda T. Walker's Report and Recommendation ("R&R") [33] regarding Defendant Donald R. LaFond, Jr.'s ("Defendant") Motion to Suppress Statements ("the Motion") [23]. In the Motion, Defendant seeks to exclude statements that he made (i) to officers at the United States Penitentiary in Atlanta, Georgia ("USP Atlanta") when he was returned to his cell following an altercation in the Segregation Housing Unit (SHU) recreation yard, and (ii) in interviews with two Federal Bureau of Investigation (FBI) Special Agents during a post-altercation investigation.

## I. BACKGROUND

Defendant is incarcerated at USP Atlanta. On March 1, 2011, he, co-defendant Robert Widdison, and a third inmate, Kenneth Mills, engaged in a fight

in the SHU recreation yard. Mills was injured in the alteration and later died as a result of his injuries.

Officer Batayias Smith, a SHU correctional officer, along with several other USP Atlanta correctional officers, responded to the fight. Officer Smith was the first to arrive at the fight scene. Defendant and Widdison were handcuffed at the scene, and Officer Smith and another correctional officer escorted Defendant back to his cell. While being escorted, Defendant spontaneously stated that his intentions were to “fight or beat the guy up.” He did not state that Widdison or anyone else was responsible for the altercation.

The next day, on March 2, 2011, Defendant was interviewed by Special Agents Paul Szabo and Chad Fitzgerald of the Atlanta FBI office. The interview was conducted in an office in the SHU. SA Szabo conducted the interview in the presence of SA Fitzgerald and Lt. Jackson, a USP Atlanta correctional officer. SA Szabo read Defendant his Miranda rights from a Miranda rights form. The form was placed in front of Defendant to allow him to read the rights as they were read to him. SA Sazbo stated that Defendant appeared to understand his rights. SA Sazbo asked Defendant if he was willing to talk about the altercation. SA Szabo did not remember if Defendant responded by saying “no” but he did recall that Defendant was “stoic” and shook his head from left to right when asked if

Defendant wanted to talk about the altercation. SA Szabo replied: "That's fine given the circumstances of the incident that occurred, there's not really a question as to what had happened." SA Szabo added: "The only thing that I don't know is the why." Defendant responded to SA Szabo's statement by saying, "Well, I can tell you that." Defendant then made statements similar to those he made while being escorted back to his cell after the fight. Defendant stated he did not want to talk about specifics of the incident or anyone else's role, and he remembered Mills "being unconscious and having some blood." Defendant was not touched or threatened during the interview, and no promises were made to him. SA Szabo described Defendant as calm, polite and cooperative.

On March 19, 2013, Defendant and co-Defendant Widdison were indicted for unlawfully killing Mills, with malice aforethought, and for aiding and abetting each other in causing Mills's death, in violation of 18 U.S.C. §§ 1111, 7(3) and 2. Defendant moves to suppress the statements he made to Officer Smith when escorted to his cell and those made to SA Szabo during the March 2, 2011, interview. In her R&R, Magistrate Judge Walker recommends that Defendant's Motion be denied with respect to the statements to Officer Smith. She also recommends that the Motion be granted with respect to the statements made to SAs Szabo principally because they were in response to SA Szabo's question to

Defendant about why Mills was assaulted—a statement that was made by SA Szabo after Defendant was read his Miranda rights and had indicated that he did not want to give a statement.

## II. STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). With respect to those findings and recommendations to which a party has not asserted objections, the Court must conduct a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

No objections to the R&R have been filed and the Court reviews the Magistrate Judge's findings and recommendations for plain error. There being no objections to the facts set forth in the R&R and finding no plain error in the Magistrate Judge's account of them, the Court adopts the facts set out in the R&R.

## III. DISCUSSION

The Fifth Amendment to the United States Constitution prohibits the use of an involuntary *confession* against a defendant in a criminal trial. Dickerson v. United States, 530 U.S. 428, 433 (2000) (emphasis added). The privilege against self-incrimination provided for in the Fifth Amendment is safeguarded by the requirement that a defendant in a custodial questioning first be given Miranda warnings. Miranda v. Arizona, 384 U.S. 436, 478-79. "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The functional equivalent of questioning is an officer's use of "any words or actions . . . (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. "'Voluntary and spontaneous comments by an accused . . . are admissible evidence if the comments were not made in response to government questioning.'" United States v. Sanders, 315 F. App'x 819, 823 (11th Cir. 2009) (quoting Cannada v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991). The absence of Miranda warnings does not preclude the admission of a spontaneous statement. United States v. Jules, 244 F. App'x 964, 972 (11th Cir. 2007); United States v. Glen-Archila, 677 F.2d 809, 814-15 (11th Cir. 1982).

Where Miranda warnings are required, they must be respected. If a defendant indicates in any manner that he wishes to remain silent, the interrogation must cease. Miranda, 384 U.S. at 473-74; see also Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1296 (11th Cir. 2007) ("Under Miranda, therefore, all questioning must be immediately discontinued once a suspect indicates a desire to remain silent."). A defendant need only "articulate his desire to end questioning with sufficient clarity so that a reasonable police officer would understand that statement to be an assertion of the right to remain silent." Davis v. United States, 512 U.S. 452, 459 (1994). Where a defendant makes statements after invoking the right to remain silent, the statements may be admissible if the law enforcement questioner has scrupulously honored the defendant's right to terminate questioning. United States v. Muhammed, 196 F. App'x 882, 885 (11th Cir. 2006). Whether there was scrupulous honoring of an interview termination request is determined on a case-by-case basis. Jackson v. Dugger, 837 F.2d 1469 (11th Cir. 2006). At a minimum, scrupulous honoring requires declining to question a suspect unless the suspect (1) initiates further conversation and (2) waives the previously asserted right to silence. Muhammed, 196 F. App'x at 885. Impermissible questioning includes words or action the police office should know are reasonable likely to elicit a response. United States v. Ramsey, 992 F.2d 301, 305 (11th Cir. 1993). A

police officer "may not ask questions or make statements which open up a more generalized discussion relating directly or indirectly to the investigation." Christopher v. State of Fla., 824 F.2d 836, 845 (11th Cir. 1987)

Against this backdrop the Court considers the two occasions during which Defendant made remarks about the March 1, 2011, fight. In the first, while being escorted after the altercation by Officer Smith, Defendant made spontaneous, unsolicited comments not in response to any question, other words or conduct of Officer Smith or the other escorting officer. See Sanders, 315 F. App'x at 823. These comments were not elicited in violation of Defendant's Fifth Amendment rights, and the Court finds no plain error in the Magistrate Judge's finding and recommendation that Defendant's Motion to suppress these statements be denied.

The statements made during the March 2, 2011, interview are problematic. The Magistrate Judge found that Defendant during the March 2, 2011, interview indicated he did not wish to speak to the agents, including by shaking his head "no." He may even have said "no." What is clear is that Defendant made known that he did not wish to proceed with the interview. SA Szabo acknowledged Defendant's decision not to speak by commenting, "That's fine given the circumstances of the incident that occurred." The agent essentially recognized he did not need Defendant to comment because there was sufficient evidence of the

incident to implicate him. Knowing that Defendant chose not to participate in the interview, SA Szabo then essentially asked why Mills was beaten. The Magistrate Judge, on this record, found that Defendant had indicated he did not agree to be questioned. The Magistrate Judge further found that SA Szabo had not scrupulously honored Defendant's right not to speak when he made a comment that was reasonably expected to invoke an incriminating response from Defendant by stating, "The only thing I don't know is the why."

The Court finds no plain error in the Magistrate Judge's findings that the questioning agent did not scrupulously honor Defendant's indication that he did not want to talk about the altercation. The Court also finds no plain error in the Magistrate Judge's recommendation that the Motion to suppress Defendant's statements from the March 2, 2011, interview be granted.

## IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** Magistrate Judge Linda T. Walker's Report and Recommendation [33] is **ADOPTED.**

**IT IS FURTHER ORDERED** that Defendant Donald R. LaFond, Jr.'s Motion to Suppress Statements [23] is **DENIED IN PART** and **GRANTED IN PART**. It is **DENIED** with respect to the statements Defendant made to Officer

Smith while being escorted to his cell on March 1, 2011, following the altercation. It is **GRANTED** with respect to the statements made by Defendant during the interview by SA Szabo on March 2, 2011.

**SO ORDERED** this 4th day of December, 2013.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE